J-S69016-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: <br> PETITION FOR INVOLUNTARY <br> TERMINATION OF PARENTAL RIGHTS OF <br> S.M.S <br><br><br><br> APPEAL OF: S.M.S. | IN THE SUPERIOR COURT OF <br> PENNSYLVANIA <br><br><br><br><br><br> No. 711 MDA 2016 |

Appeal from the Order entered April 5, 2016
in the Court of Common Pleas of Lebanon County,
Orphans' Court, at No(s): 2015-771.

BEFORE: STABILE, J., DUBOW, J., and PLATT, J.[*]

MEMORANDUM BY DUBOW, J.:                    **FILED SEPTEMBER 26, 2016**

Appellant, S.M.S. ("Father") appeals from the Order involuntarily terminating his parental rights to his daughter, B.K.S. ("Child"), pursuant to the Adoption Act, 23 Pa.C.S. § 2511(a) and (b). We affirm.

**SUMMARY OF FACTS AND PROCEDURAL HISTORY**

Child was born in September 2008. Father and B.A.B. ("Mother") were never married, and separated in 2009. Child has always resided with Mother. "For the first two to three years of [Child's] life, Father saw [Child] on a regular basis, but visitation all but ceased when transportation became

_____

[*] Retired Senior Judge Assigned to the Superior Court.

an issue for Father." Orphans' Court Opinion, 4/5/16, at 5. Mother married in 2015. In the spring of that year, Mother's husband reached out to Father, via a Facebook message, to encourage continued contact with Child. Thereafter, Father resumed regular visitation with Child leading up to his last visit in June. He had no further contact over the next month, however, and he was incarcerated on multiple charges of child pornography on August 10, 2015.[1]

About a month into Father's incarceration, Mother wrote him a letter informing him that she would soon begin the process to terminate his parental rights. Mother also told Father that she did not want Child to learn of the reasons for his incarceration, and told him that she would not allow Child to visit him at the prison. Father had no contact with Child while he was incarcerated, nor did he attempt to contact Child during his incarceration.

Mother filed a Petition for the Involuntary Termination of Parental Rights ("TPR petition") of Father on December 7, 2015, pursuant to 23 Pa.C.S. § 2511(a)(1) and § 2511(b). The Orphans' Court held an

---

[1] Although not indicated in the certified record, our review of Father's criminal docket reveals that on June 22, 2016, he entered a negotiated guilty plea to 105 counts of child pornography and related charges, and received an aggregate sentence of approximately one to two years of imprisonment with credit for time served. Docket review further indicates that Father was granted parole on August 18, 2016.

evidentiary hearing regarding Mother's TPR Petition on February 26, 2016. Mother and her husband testified. Father testified on his own behalf. According to Father, after receiving Mother's letter, he did not write to Child because he believed Mother would not give his letters to her. At the conclusion of the hearing, the Orphans' Court took the matter under advisement, and afforded the parties the opportunity to file briefs. By order entered April 5, 2016, the Orphans' Court terminated Father's parental rights based upon Section 2511(a)(1) and Section 2511(b). This timely appeal by Father follows.

**ISSUES ON APPEAL**

Father raises the following issue on appeal:

> Did the [Orphans'] Court commit an error of law by terminating the parental rights of [S.M.S.,] the biological father while he was incarcerated despite [his] continued desire to have contact with his daughter only to have his efforts stymied by [Mother]?

Father's Brief at 9.

**LEGAL ANALYSIS**

The standard of review in termination of parental rights cases requires appellate courts "to accept the findings of fact and credibility determinations of the trial court if they are supported by the record." *In re Adoption of S.P.*, 47 A.3d 817, 826 (Pa. 2012). "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion." *Id.* We may reverse a decision based on an abuse

of discretion only upon demonstration of "manifest unreasonableness, partiality, prejudice, bias, or ill-will." *Id.* We may not reverse, however, merely because the record would support a different result." *Id.* at 827.

We give great deference to trial courts that often have had first-hand observations of the parties spanning multiple hearings. *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013). The Orphans' Court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence. *In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009). We have explained that "[t]he standard of clear and convincing evidence is defined as testimony that is so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *Id.* (citations omitted).

**Termination Pursuant to 2511(a)(1)**

Section 2511(a)(1) provides that the trial court may terminate parental rights if the Petitioner establishes that for six months, the parent demonstrated a settled intent to relinquish a parental claim or a refusal or failure to perform parental duties:

a) The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

23 Pa.C.S. §. 2511(a)(1). This Court has interpreted this provision as requiring the Petitioner to demonstrate a settled intent to relinquish a parental claim to a child or a refusal or failure to parent:

To satisfy the requirements of section 2511(a)(1), the moving party must produce <u>clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties.</u>

*In re Z.S.W.*, 946 A.2d 726, 730 (Pa. Super. 2008) (internal citations omitted) (emphasis added).

This Court has defined "parental duties" in general as the obligation to affirmatively and consistently provide safety, security and stability for the child:

There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this Court has held that the parental obligation is a positive duty which requires affirmative performance. This affirmative duty … requires continuing interest in the child and a genuine effort to maintain communication and association with the child. Because a child needs more than a benefactor, parental duty requires

- 5 -

that a parent exert himself to take and maintain a place of importance in the child's life.

*Id.*

Moreover, a parent must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent child relationship:

Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship.

*In re B., N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004) (internal citations omitted).

When, as here, a parent is incarcerated, in considering termination under Section 2511(a)(1), the Orphans' Court must analyze whether an incarcerated parent exercised reasonable firmness in declining to yield to obstacles created by imprisonment and employed available resources to maintain a relationship with the child. *In re Adoption of S.P.*, *supra* at 828.

And most importantly, "parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with her physical and emotional needs." **Id.**

In the instant case, the Orphans' Court properly concluded that Mother met the requirements of Section 2511(a)(1). The court found that, during the relevant period prior to Mother's filing of the TPR Petition on December 7, 2015, Father had had no contact with Child, and, in essence, abandoned his relationship with her. The court further found that Father's claim that Mother had "stymied" his attempts to continue contact with Child was not supported by the record. The Orphans' Court explained:

> In the current case, Father could have attempted to contact [Child] despite his incarceration. Father made no attempts to call [Child] or send letters or presents to [Child]. Father testified that he did not attempt to contact [Child[ because he did not think any attempt to contact [Child] would be successful because Mother wrote Father a letter that stated that Mother would like to terminate Father's parental rights. The letter also stated that [Child] would not be visiting him in prison.
>
> Although Mother expressed her desires to Father, there was nothing preventing Father from attempting to contact [Child]. Father did not make a single attempt to contact [Child] both before and after he received the letter from Mother. He also did not attempt to contact [Child] while he was on the run, before his incarceration.
>
> This Court finds that Father has abandoned [Child]. Father voluntarily ceased contact both before and during his incarceration. Father has voluntarily not attempted to have contact with [Child] for a period of six (6) months, therefore, this Court finds that it would be appropriate to terminate Father' parental rights at this time.

Orphans' Court Opinion, 4/5/16, at 6.

Father argues that the Orphans' Court erred in terminating his parental rights pursuant to Section 2511(a)(1) because "the facts are clear

in this case that [Mother] asked him not to communicate with his daughter while he was in jail." Father's Brief at 13. According to Father, "Pennsylvania law is clear that should one party thwart the ability of the other from having contact with their child a claim for abandonment cannot be maintained." *Id.*

Our review of the record refutes these claims. Father's arguments focus on the credibility of the witnesses and we accept the Orphans' Court's crediting the testimony of Mother and her husband over Father's testimony. *In re M.G.*, *supra*. In addition, we note that Mother clearly expressed her intent to begin the process of terminating Father's parental rights, a fact that put Father on notice and should have motivated him to continue his contact with Child.

**CONCLUSION**

In sum, our review of the record supports the Orphans' Court's determination that Mother met her statutory burden of proving by clear and convincing evidence that Father's parental rights should be terminated pursuant to 23 Pa.C.S. §§ 2511(a)(1) and 2511(b).[2] Accordingly, we affirm.

Order affirmed.

---

[2] Father does not challenge the trial court's conclusion, consistent with Section 2511(b), that termination of his parental rights was in Child's best interests. Nevertheless, our review of the record contains little or no evidence of a bond between Father and Child. Further, Mother's husband testified that he and the Child have a loving relationship, and he is ready and willing to adopt her. *See* N.T., 2/26/16, at 32-37.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>9/26/2016</u>